# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KING RANCH, INC., and KING RANCH IP, LLC,**

          **Plaintiffs,**

**-vs-**                                                                **Case No.  6:12-cv-597-Orl-37KRS**

**KING RANCH CONTRACTORS, LLC., CARLOS A. CINTRON, individually, doing business as KING RANCH AUTO GLASS and as a managing member of KING RANCH CONTRACTORS, LLC, TITO O. MEDINA, individually and as a managing member of KING RANCH CONTRACTORS,**

          **Defendants.**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**     **PLAINTIFFS' MOTION FOR FINAL, DEFAULT JUDGMENT AGAINST DEFENDANT KING RANCH CONTRACTORS, LLC AND CARLOS A. CINTRON AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF (Doc. No. 15)**
>
> **FILED:**     **September 24, 2012**

**I.      PROCEDURAL HISTORY.**

Plaintiffs King Ranch, Inc. and King Ranch IP, LLC (hereinafter "Plaintiffs") filed a complaint against Defendants King Ranch Contractors, LLC, Carlos A. Cintron, individually and d/b/a King Ranch Auto Glass and as a managing member of King Ranch Contractors, LLC, alleging trademark infringement, unfair competition, and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and § 1125(a) and (c), federal cyberpiracy in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), trademark infringement and unfair competition under Florida common law, and trademark dilution under Fla. Stat. § 495.151. Doc. No. 1.[1]  The complaint was served on Carlos A. Cintron, personally and as registered agent of King Ranch Contractors, LLC, on April 25, 2012.  Doc. Nos. 6 and 7.  Neither Cintron nor King Ranch Contractors, LLC appeared in the case.  At the request of Plaintiffs, the Clerk of Court entered a default against Cintron and King Ranch Contractors on June 21, 2012.  Doc. No. 13.

On September 24, 2012, Plaintiffs filed a motion for default judgment against King Ranch Contractors, LLC and Carlos A. Cintron (hereinafter "Defendants").  Doc. No. 15.  The motion seeks a permanent injunction prohibiting Defendants from, among other things, continuing to use the allegedly infringing trademarks and transferring the www.kingranchcontractors.com and www.kingranchautoglass.com domain names to Plaintiffs.  In support of their motion, Plaintiffs submitted an affidavit of Plaintiffs' Senior Vice President and Chief Financial Officer William J. Gardiner.  Doc. No. 15-1.  Plaintiffs also submitted an affidavit from one of Plaintiffs' attorneys, Cole

---

[1] Plaintiffs also named Tito Medina as a Defendant.  They voluntarily dismissed the claims against him without prejudice.  Doc. Nos. 16, 17.

Mackey, which includes a list of Plaintiffs' trademarks and describes the steps Plaintiffs took to resolve the dispute with the Defendants before filing of the complaint. Doc. No. 15-2.

The motion for default judgment was referred to me for issuance of a Report and Recommendation. The motion is now ripe for resolution.

## II.     FACTS ALLEGED IN THE COMPLAINT.[2]

Plaintiff King Ranch IP, LLC is a limited liability company organized under the laws of the State of Delaware. Doc. No. 1 at 2-3. It is an affiliate of Plaintiff King Ranch, Inc., a Texas corporation *Id.* at 3. King Ranch IP, LLC owns and manages King Ranch's intellectual property assets, including several KING RANCH trademarks registered in the United States. *Id.* Plaintiff King Ranch, Inc. is a corporation organized under the laws of the State of Texas. It owns and operates the King Ranch in Texas as well as other companies in Florida and across the United States. *Id.* King Ranch, Inc. is a licensee of King Ranch, IP, LLC. *Id.*

Defendant King Ranch Contractors, LLC is a Florida limited liability company organized under the laws of the State of Florida, with its principal place of business in Orlando. *Id.* Defendant Carlos A. Cintron is a managing member of King Ranch Contractors, LLC. *Id.* Cintron also conducts business in Orlando using the name King Ranch Auto Glass. *Id.* King Ranch Contractors, LLC has a website found at www.kingranchcontracors.com, and King Ranch Auto Glass has a website found at www.kingranchautoglass.com. *Id.* Defendants have registered, trafficked in, or used these domain names, which are identical or confusingly similar to the KING RANCH mark. *Id.* at 14-15.

---

[2] I do not include in this section additional facts and evidence set forth in Plaintiffs' motion because only the facts set forth in the complaint are deemed to be admitted by Defendants.

The King Ranch, which was founded in 1853, is a world famous 825,000 acre ranch located in South Texas. *Id.* at 4. Plaintiffs also established a 42,000 acre South Florida farm in 1961 in the Everglades Agricultural Area, and they operate their Florida companies in the industries of sugar cane, hay, sod, corn, rice, beans, and citrus. Plaintiffs are one of the top ten sod producers in Florida with an office in Belle Glade, and they are the largest member of the Sugar Cane Growers Cooperative of Florida. *Id*. at 5. Plaintiffs have a website found at www.king-ranch.com that contains information about Plaintiffs and their national operations. *Id*. at 4.

Plaintiffs own dozens of registered Federal and state trademarks for the mark KING RANCH in the United States and have been using the KING RANCH mark since King Ranch was founded. *Id*. at 4. Plaintiffs first adopted and used the KING RANCH mark in Florida to establish good will and their reputation, and they are the senior users of the KING RANCH mark as compared to Defendants. *Id.* at 15-16. The KING RANCH mark and tradename has acquired a special significance as the name of the goods and services marketed by King Ranch and Plaintiffs' licensees in Florida and elsewhere. *Id.* at 16.

Plaintiffs have licensed the KING RANCH name and mark for products sold throughout the United States such as trucks, shotguns, and rifles. For example, Plaintiffs licensed the KING RANCH mark to Ford Motor Company for the "KING RANCH Edition" line of Ford trucks and SUVs. *Id*. at 5.[3] Plaintiffs have carefully selected their licensees for the KING RANCH mark based on quality and superior craftsmanship, and each licensee compensates Plaintiffs for the privilege of using the

---

[3] Attached to Attorney Mackey's affidavit are federal trademark registration documents that reflect that the trademark KING RANCH has been registered for a number of categories of goods, including: Horses and Cattle and Animal Feed; Motor Vehicles, namely, Trucks; Leather Seating and Interior Leather Trim for Motor Vehicles; Floor Mats for Automobiles; Furniture; and Retail Store Services. Doc. No. 15-2 at 7-14.

mark. *Id*. at 6. One of Plaintiffs' affiliates, King Ranch Saddle Shop, Inc., sells a line of merchandise, including vehicle accessories, by mail order catalogue and through its website. *Id.* at 5.

Because of advertising and marketing over several years by Plaintiffs and their licensees, the KING RANCH mark has become nationally recognized and has developed substantial goodwill and reputation. The goodwill and common law rights in the KING RANCH mark have been developed throughout the United States, including Florida. *Id*. at 6. The KING RANCH mark is distinctive and strong and identifies Plaintiffs as the source of quality products and services. The mark has been used by Plaintiffs to distinguish their products and services from those of other companies and has become a sign upon which consumers can rely. *Id*. at 6, 10, 11. Plaintiffs have maintained substantially exclusive and continuous use of the KING RANCH mark in commerce, as defined in 15 U.S.C. § 1052(f), for over five years. *Id*. at 6.

Without permission of Plaintiffs, Defendants are using the KING RANCH mark to advertise, market and sell their automotive glass and contractor-related goods and services on the internet and throughout central Florida. *Id*. at 7. Defendants use the KING RANCH mark on their vehicles and in the name of their website to attract customers. *Id*. The KING RANCH mark is also displayed in Defendants' company logos and on Defendants' advertising and marketing materials. *Id*. at 7-9. The complaint contains samples of Defendants' use of the King Ranch name, as follows:

  

*Id.*

Defendants' unauthorized uses of the KING RANCH mark falsely indicate to consumers that Defendants' products and services originate from, are approved by, are sponsored by, are licensed by, or are affiliated with Plaintiffs or are otherwise associated with Plaintiffs' products and services. *Id.* at 11. As a result, there is a likelihood of customer confusion between the KING RANCH mark and the marks wrongfully used by Defendants. *Id.* at 16, 17. Defendants' unauthorized uses of the KING RANCH mark in commerce are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' goods and services with Plaintiffs. *Id.* at 12, 13. Defendants' acts also dilute or are likely to cause dilution of the distinctive quality of the KING RANCH mark. *Id.* at 13, 18. Defendants' willfully intended to trade and continue to trade on the reputation of Plaintiffs. *Id.* at 12, 14, 18.

Defendants knew or should have known that their unauthorized use of the KING RANCH mark, or a confusingly similar mark, would result in a benefit to Defendants. *Id.* at 12. Defendants' acts constitute a bad faith intent to profit from the KING RANCH mark. *Id.* at 14. Defendants' unauthorized uses of the KING RANCH mark have unjustly enriched Defendants at the expense of King Ranch's reputation and goodwill. *Id.* at 12.

**III.   APPLICABLE LAW.**

In general, a court may enter a default judgment when the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). To support an entry of default judgment, "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citation omitted). If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages. Fed. R. Civ. P. 55(b)(2). *See also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Id.*

**IV.   ANALYSIS.**

   *A.   Liability.*

A default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit. Fed. R. Civ. P. 55(a). Defendants were validly served with process, but they did not appear in the case. Doc. Nos. 6-7. Therefore, so long as Plaintiffs' factual allegations support each element of their claims, a default judgment is appropriate.

   1.   <u>Counts I and V: Trademark Infringement in Violation of the Lanham Act and Florida Common Law Trademark Infringement</u>.

To prevail on a claim of trademark infringement in violation of the Lanham Act and Florida common law, Plaintiffs must demonstrate the following: (1) they possess a valid mark; (2) Defendants used the mark or a colorable imitation of the mark; (3) Defendants' use of the mark occurred "in commerce"; (4) Defendants used the mark "in connection with the sale . . . or advertising of any goods or services"; and (5) Defendants used the mark in a manner likely to confuse consumers. 15 U.S.C. § 1114(1)(a); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir.

2008); *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2001) (citations omitted) (stating that the analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act).

After five years of continuous use, the Lanham Act allows the owner of a registered trademark to obtain "incontestable" status. Once a registration has achieved incontestable status, that status is treated as conclusive evidence of the registrant's right to use the trademark, subject to enumerated defenses. 15 U.S.C. § 1115(b); *see also Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1208 (11th Cir. 1999).

By failing to respond to the complaint, Defendants admit that Plaintiffs have used the KING RANCH mark since 1853 and that Plaintiffs have maintained substantially exclusive and continuous use of this distinctive mark in commerce for over five years. Doc. No. 1 at 10. Therefore, the KING RANCH trademark has obtained incontestable status. Defendants also admit that they used Plaintiffs' KING RANCH mark in commerce to sell or advertise goods, specifically to advertise, market, and sell their automotive glass and contractor-related goods and services throughout central Florida and over the internet. *Id*. at 7. This satisfies the first four elements of the analysis.

For the last element of trademark infringement, "[s]even factors are relevant when determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual

confusion." *Axiom Worldwide*, *Inc.,* 522 F.3d at 1220 (citing *Alliance Metals, Inc. of Atlanta v. Hinley Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000)).

By failing to answer the complaint, Defendants admit that Plaintiffs' KING RANCH mark is incontestable and, therefore, is presumed to be strong.[4] Defendants further admit that their use of "King Ranch" in their contractor-related and automotive glass businesses is similar to Plaintiffs' KING RANCH mark. Defendants admit that they use the "King Ranch" designation in their automotive glass business and that Plaintiffs have licensed the KING RANCH mark for use by the Ford Motor Company in the automotive industry. Defendants also admit that their sales and advertising methods are similar to those used by Plaintiffs. Among other things, Plaintiffs and Defendants advertise on the internet with websites that contain the name King Ranch, and Plaintiffs and Defendants display the King Ranch name prominently throughout their businesses. Defendants admit that they have used the "King Ranch" designation to unjustly enrich themselves.

Defendants did not admit, however, that there has been any actual confusion. However, evidence of actual confusion is not a prerequisite to finding a likelihood of confusion. *Frehling Enterps., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999) (citing *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)). Here, Defendants have admitted that the KING RANCH mark is strong and used in commerce nationally in a wide-range of products, including in the automotive industry, which is the industry in which Defendants operate their automotive glass business. Defendants admit that their use of "King Ranch" is the same or similar

---

[4] In *Dieter v. B&H Industries of Southwest Florida*, 880 F.2d 322, 329 (11th Cir. 1989), the United States Court of Appeals for the Eleventh Circuit found that an incontestable trademark is presumed to be a relatively strong mark.

to Plaintiffs' KING RANCH mark and that they use the mark in similar manners to sell and advertise their businesses. By admitting that they used the "King Ranch" designation to unjustly enrich themselves, they have admitted that they intended to gain a competitive advantage through use of the mark. These admissions are sufficient to establish the fifth element of trademark infringement.

Because all five elements of trademark infringement have been established by well-pleaded facts, Defendants are liable for trademark infringement under Federal and Florida law.[5]

### 2. Count II: Unfair Competition in Violation of the Lanham Act.

To prevail on a claim for unfair competition under the Lanham Act, Plaintiffs must establish the following: 1) they had prior rights to the mark at issue and 2) Defendants adopted a mark or name that was the same or confusingly similar to Plaintiffs' mark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)). As discussed above, Defendants have admitted that Plaintiffs had prior rights to the mark and that Defendants' mark is confusingly similar to Plaintiffs' KING RANCH mark. Doc. No. 1 at 3-11; *see Petmed Exp., Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004). Therefore, Defendants are liable for unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

---

[5] This Report and Recommendation does not stand for the proposition that, in a contested case, the KING RANCH mark would be infringed by the Defendants' use of "King Ranch" in connection with businesses operating only in central Florida. *Cf. King Ranch, Inc. v. D.R. Horton, Inc.*, No. H-12-797, 2012 WL 1788178 (S.D. Tex. May 16, 2012).

### 3. Counts III and VII: Trademark Dilution in Violation of the Lanham Act and Florida Law.

For a claim of federal trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), Plaintiffs must show the following: (1) their mark is famous, (2) Defendants adopted Plaintiffs' mark after it became famous, (3) Defendants' mark diluted Plaintiffs' mark, and (4) Defendants' use of Plaintiffs' KING RANCH mark is commercial and in commerce. *Id.* The standard under Florida law is virtually identical to that of federal law. Fla. Stat. § 495.151; *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009).

By failing to answer the complaint, Defendants admit that Plaintiffs' mark is famous. Doc. No. 1. at 4, 14. Defendants also admit that after Plaintiffs' KING RANCH mark became famous, Defendants began using the "King Ranch" designation. Defendants further admit that their use of the name "King Ranch" in connection with their businesses has caused, or is likely to cause, dilution of the KING RANCH mark. *Id.* at 14. Lastly, Defendants have admitted that their use of the mark was for the commercial purposes of marketing and selling their automotive and contractor-related goods and services. *Id.* at 7. Therefore, all four elements of trademark dilution have been met. Accordingly, Defendants are liable for trademark dilution under the Lanham Act and Florida law.

### 4. Count IV: Cybersquatting in Violation of the ACPA.

Plaintiffs also allege that Defendants engaged in cybersquatting, in violation of the ACPA, 15 U.S.C. § 1125(d). Cybersquatting "'occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder.'" *Sound Surgical Techs., LLC v. Leonard A.*

*Rubinstein, M.D., P.A.*, 734 F. Supp. 2d 1262, 1275 (M.D. Fla. 2010) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 205 (6th Cir. 2004)).  To establish a claim under the ACPA, Plaintiffs must establish the following: (1) they have a valid trademark entitled to protection, (2) their mark is distinctive or famous, (3) Defendants' domain names are identical or confusingly similar to Plaintiffs' mark, and (4) Defendants used, registered, or trafficked in the domain name (5) with a bad faith intent to profit  *Id.*

By defaulting, Defendants admit that Plaintiffs have a valid trademark entitled to protection. They admit that Plaintiffs' KING RANCH mark is a registered mark that is distinctive and famous.[6] They admit that their domain names are the same or confusingly similar to Plaintiffs' KING RANCH mark.  This is sufficient to establish the first three factors.

As to the fourth factor, by defaulting, Defendants admit that they "have registered, trafficked in, *or* used the domain names kingranchcontractors.com and kingranchautoglass.com."  Doc. No. 1. at 15 (emphasis added).  Because there are no allegations showing that either Defendant registered or trafficked in the domain names at issue and because Defendants admit only that they either registered, trafficked in, *or* used the domain names, Defendants do not admit by defaulting that they registered or trafficked in the domain names at issue.

While there are allegations that Defendants used the domain names at issue, they cannot be found liable unless it is established that they are either the domain name registrants or a licensee of the registrants.  *See* 15 U.S.C. § 1125 (d)(1)(D).  There are no allegations in the complaint regarding

---

[6] Registration of a trademark establishes a rebuttable presumption that it is distinctive. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n. 3 (11th Cir. 2007) (citing 15 U.S.C. § 1057(b)) ("Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.'").

who registered the domain names at issue or who the registrant licensed to use the domain names at issue. Therefore, the well-pleaded allegations of the complaint do not establish the fourth element of violation of the ACPA. Accordingly, Defendants are not liable for cybersquatting in violation of the ACPA.

          5.      <u>Count VI: Unfair Competition in Violation of Florida Common Law</u>.

To prevail on a Florida common law claim of unfair competition, the Plaintiffs must establish the following:

> (1) that plaintiff is the prior user of the trade name or service mark; (2) that the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning; (3) that the defendant is using a "confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name" or service mark; and (4) that as a result of defendant's action or threatened action, consumer confusion as to the source or sponsorship of defendant's goods and services is likely.

*Am. United Life Ins. Co. v. Am. United Ins. Co.*, 731 F. Supp. 480, 486 (S.D. Fla. 1990) (quoting *Am. Bank of Merritt Island v. First Am. Bank and Trust,* 455 So. 2d 443, 445–46 (Fla. 5th Dist. Ct. App. 1984)).

As discussed above, by defaulting, Defendants admit that Plaintiffs are the prior users of the KING RANCH mark. They do not admit that the KING RANCH mark is arbitrary or suggestive, but they do admit that the KING RANCH mark has acquired special significance as the name of goods and services marketed by Plaintiffs and their licensees. This is sufficient to establish the first two elements of Florida unfair competition.

The Florida Supreme Court has interpreted the competition requirement in the third element "'to require a showing of 'similarity in businesses of the parties.'" *Id.* (quoting *Sun Coast v. Shupe*, 52 So. 2d 805, 805 (Fla. 1951)); *see also Marks v. Cayo Hueso, Ltd.*, 437 So.2d 775 (Fla. 3d Dist. Ct. App. 1983) (reaffirming that common law unfair competition claim requires the element of competition while Fla. Stat. § 495.151 does not). In the present case, Plaintiffs do not allege that they are in the automobile glass business, and they do not allege that they provide contractor-related services. Therefore, the well-pleaded allegations of the complaint are insufficient to establish that Plaintiffs and Defendants "compete[ ]. . . for a common pool of customers." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007). Accordingly, Defendants are not liable to Plaintiffs for violation of Florida common law unfair competition.

    *B.*    *Remedies.*

Plaintiffs seek a permanent injunction prohibiting Defendants from using the KING RANCH mark, transferring any domain name under Defendants' control that includes the designation "King Ranch" to Plaintiffs, requiring Defendants to destroy or to deliver to Plaintiffs for destruction any infringing materials, and requiring Defendants to file a written report with the Court setting forth the manner in which they have complied with the permanent injunction. Doc. No. 15-4 at 3-4.[7]

---

[7] In the complaint, Plaintiffs also asked for an award of money damages, attorney's fees and costs. Because this relief is not requested in the motion for entry of a default judgment, I recommend that the court find that Plaintiffs have abandoned these elements of damages.

-14-

In support of their request for this relief, Plaintiffs filed the following:

- Affidavit of William J. Gardiner, Senior Vice President and Chief Financial Officer of Plaintiff King Ranch, Inc., Doc. No. 15-1;

- Affidavit of Cole Mackey, counsel for Plaintiffs, with exhibits, Doc. No. 15-2;

- Proposed Report and Recommendation, Doc. No. 15-3; and,

- Proposed Order on Plaintiffs' Motion with permanent injunction language, Doc. No. 15-4.

In addition to the facts alleged in the complaint, Mr. Gardiner avers that Defendants did not ask for a license to use the KING RANCH mark and that Plaintiffs have never given Defendants permission to use their mark. Doc. No. 15-1 ¶ 11.

In addition to facts alleged in the complaint, Attorney Mackey avers that Defendants took substantial steps to contact Defendants to demand that they cease and desist their unauthorized use of the "King Ranch" designation. Doc. No. 15-2 ¶¶ 7-8. Although Defendant Cintron received Plaintiffs' cease and desist letter (Doc. No. 15-2 at 16-22), Defendants did not respond. *Id.* ¶ 9. Attorney Mackey further averred on information and belief that Defendant Cintron is not on active duty in or a member of the U.S. military and that he is not a minor or an incompetent person. *Id.* ¶¶ 14-15.

### 1. Entry of a Permanent Injunction

The Court may enter an injunction for violation of the Lanham Act. 15 U.S.C. § 1116 (a). A plaintiff seeking a permanent injunction must demonstrate the following: (1) it suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for the injury; (3) considering the balance of the hardships between a plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent

injunction. *EBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A strong showing of the likelihood of confusion could by itself show a serious threat of irreparable harm. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985)).

Plaintiffs seek to rely on a presumption that an injunction is the remedy of choice for trademark and unfair competition cases "'since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.'" Doc. No. 15 at 11-12 (quoting *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995)). After *Agad* was decided, the Supreme Court called into question whether a court may presume irreparable harm in an intellectual property case, in that case a patent infringement dispute. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). As of the writing of this order, it is not clear whether the United States Court of Appeals for the Eleventh Circuit would continue to rely on a presumption of irreparable injury in a trademark infringement case. *See Axiom Worldwide, Inc.*, 522 F.3d at 1228. Accordingly, I examine the allegations of the complaint admitted by Defendants to determine whether irreparable harm has been shown without reliance on the presumption.

As discussed above, by their default Defendants admit that Plaintiffs' KING RANCH mark is nationally recognized and has developed substantial goodwill and reputation. Doc. No. 1 at 6. Defendants further admit that Plaintiffs carefully select the licensees permitted to use the KING RANCH mark to ensure that the mark is associated with good or superior craftsmanship and quality. *Id.* Defendants further admit that Plaintiffs have invested substantial sums in promoting the products and services offered under the KING RANCH mark. *Id.* at 10. Based on these facts, issuance of a permanent injunction is necessary because Plaintiffs face damage to their reputation

and goodwill if Defendants are permitted to continue to use the "King Ranch" designation on products and services over which Plaintiffs cannot exercise any quality control. Under these circumstances, no remedies at law would be adequate to compensate Plaintiffs for damage to their goodwill and reputation. *See, e.g., McDonald's*, 147 F.3d at 1309. Accordingly, the first two elements for entry of a permanent injunction have been established.

As to the last two factors, while Defendants will suffer some hardship by virtue of having to remove "King Ranch" from their business names, logos, websites and the like, this hardship, on balance, does not override the loss of goodwill and reputation Plaintiffs will suffer if Defendants are allowed to continue to use the designation "King Ranch" without oversight or quality control by Plaintiffs. The public's interest is not disserved by requiring Defendants to respect Plaintiffs' registered KING RANCH trademark. Therefore, all of the elements for entry of a permanent injunction have been established.

Because these factors favor the entry of a permanent injunction, I recommend that the Court grant Plaintiffs' request for issuance of a permanent injunction in a form it determines to be appropriate.

        2.        <u>Content of the Permanent Injunction</u>

Whenever trademark infringement in violation of the Lanham Act has been established, "the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing . . . the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof . . . shall be delivered up and destroyed." 15 U.S.C. § 1118. Plaintiffs ask the Court to order Defendants to

"deliver up for destruction, or show proof of destruction of . . . products, labels, business cards, signs, prints, packages, wrappers, receptacles, and advertisements, and any other materials . . . that depict or display the designation 'King Ranch'. . . and any materials or articles used for making or reproducing the same . . . ." Doc. No. 15-4 ¶ 3(c).

The request that the Court order destruction of all items bearing the "King Ranch" designation and materials or articles used for making items bearing the "King Ranch" designation is overbroad to the extent that it would require Defendants to destroy computer equipment used to create advertising, logos, business cards and the like that use the "King Ranch" designation. Rather, the permanent injunction should provide that Defendants must delete electronically stored information used for making items bearing the "King Ranch" designation, similar to Plaintiffs' proposal that Defendants may "cover or remove the designation 'King Ranch' from all vehicles in their possession, custody or control," rather than destroying the vehicles. Doc. No. 1 at 20. Therefore, I recommend that the permanent injunction language be clarified to permit the Defendants to delete the "King Ranch" designation from any templates or other electronically stored information that has or can be used to create advertising, business cards, etc. bearing the "King Ranch" designation.

Plaintiffs also ask that the Court order Defendants "to transfer any domain name under their control that includes the designation KING RANCH . . . to King Ranch, Inc . . . ." Doc. No. 15-4 ¶ 3(a). The ACPA permits an order requiring that an infringing domain name be transferred to the legitimate owner of a mark. As discussed above, however, in this case Plaintiffs have not established that Defendants own either of the allegedly infringing domain names. Accordingly, a permanent injunction requiring transfer of the domain names is not appropriate. Rather,

Defendants should be required to cease using domain names that use the "King Ranch" designation and to remove the "King Ranch" designation from their internet advertising.

Finally, Plaintiffs ask that this Court require Defendants to serve on them and file with the Court a report under oath setting forth in detail the manner in which Defendants have complied with the Court's order within 30 days of entry of the order as provided for in 15 U.S.C. § 1116(a). Because Defendants have not appeared in this case, I recommend that, rather than requiring this written report, the Court direct Plaintiffs to serve a copy of the final order and permanent injunction on Defendants and provide Plaintiffs with period of time after such service to comply with the requirements of the permanent injunction, failing which Plaintiffs may file a motion for enforcement of the permanent injunction supported by evidence of personal service on Defendants and evidence of violation of the injunction.

Finally, Plaintiffs should send a proposed form of permanent injunction, in word processing format, to the chambers of the presiding District Judge within the time permitted to file objections to this Report and Recommendation.

## V.   RECOMMENDATION.

For the reasons stated above, it is **RESPECTFULLY RECOMMENDED** that the Court do the following:

(1)   **GRANT in part** and **DENY in part** Plaintiffs' motion for default judgment;

(2)   **ENTER** an Order finding Defendants liable for violations of federal and Florida common law trademark infringement (Counts I and V), federal unfair competition (Count II), and federal and Florida trademark dilution (Counts III and VII);

(3)   **DISMISS** Counts IV (ACPA) and VI (Florida common law unfair competition);

(4)     **ENTER** a permanent injunction in a form approved by the Court;

(5)     **DIRECT** the Clerk of Court to enter a final judgment consistent with the Court's order on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 29, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy